**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

GARY W. MUFFLEY, Regional Director
of the Ninth Region of the National Labor
Relations Board, for and on behalf of the
NATIONAL LABOR RELATIONS BOARD,

                Petitioner,

v.                                      CIVIL ACTION NO.  2:08-cv-00073

MASSEY ENERGY COMPANY, et al.,

                Respondents

**MEMORANDUM OPINION & ORDER**

Pending before the court are the respondents' Motions to Dismiss Petition for Injunction under Section 10(j) of the National Labor Relations Act [Dockets 26 & 30]. The respondents argue that the petition for an interim injunction should be dismissed on two independent grounds. First, the respondents urge dismissal because the petitioner lacks the legal authority to bring the petition on behalf of the National Labor Relations Board. Second, the respondents argue that injunctive relief is not "just and proper" under § 10(j) of the National Labor Relations Act, 29 U.S.C. § 160(j).

As for the respondents' first ground for dismissal, I **FIND** that it has no merit, and I **DENY** the motion on that ground. As for the second ground for dismissal, I **FIND** that it is an equitable determination that requires a hearing.

**I. Background**

    A. Factual Background

In August 2004, respondent Massey Energy Co. ("Massey") bought a coal mining operation known as Cannelton Industries, Inc., from Horizon Natural Resources Co. ("Horizon") after Horizon

filed for bankruptcy. (Pet.'s Mem. Points & Auth. 5 [Docket 2].) Massey purchased this property "free and clear" of the collective bargaining agreement under which the employees at the Cannelton mine had previously worked. (Spartan's Mem. 2 [Docket 27]; Pet.'s Mem. Points & Auth. 6.) Massey operated the mine via its subsidiary, respondent Spartan Mining Co. ("Spartan"), which does business as Mammoth Coal Co. (Pet.'s Mem. Points & Auth. 5.)

After the respondents took control of the mine in September 2004, every former employee that had previously been a part of the "bargaining unit," and represented by the United Mine Workers of America ("UMWA"), lost his or her job. (*Id.* at 6.) On December 3, 2004, the respondents began hiring at the Cannelton property. (*Id.* at 7.) According to the petitioner, despite many of the former employees being ready and able to return to work at the mine, only twenty-two of over two hundred former bargaining unit employees were hired by the respondents to work at the Cannelton property. (*Id.*) Moreover, the petitioner alleges that the respondents did not hire any of the eleven former employees who had previously been union officials or union committee members. (*Id.*) Finally, the petitioner asserts that since the respondents acquired the Cannelton property in 2004, they have refused to bargain with the UMWA. (*Id.*)

B. Administrative Proceedings

On June 2, 2005, the UMWA filed a charge with the National Labor Relations Board (the "Board") alleging that the respondents were engaging in unfair labor practices in violation of the National Labor Relations Act ("NLRA"), as amended, 29 U.S.C. §§ 151-69. (Spartan's Mem. 2.) On June 28, 2005, July 22, 2005, and June 22, 2006, the UMWA amended the charge. (*Id.*) The UMWA asserted that the alleged unfair labor practices began on or about December 6, 2004. (Pet. Ex. 1(a)-(d).)

In response to the charge filed by the UMWA, the petitioner filed a complaint against respondent Mammoth on August 8, 2006, pursuant to 29 U.S.C. § 160(b). (Spartan's Mem. 2.) On October 6, 2006, the petitioner amended the complaint to add Massey as a defendant. (*Id.*) The amended complaint alleged, among other things, that the respondents violated the NLRA by discouraging membership in a labor organization by refusing to hire certain employees of Horizon who previously worked at the Cannelton property and who were members of the UMWA. (Pet. Ex. 2(b).) The amended complaint also alleged that the respondents violated the NLRA by failing to recognize and bargain with the UMWA at the Cannelton property. (Pet. Ex. 2(b).)

After sixteen days of evidence and argument before an Administrative Law Judge ("ALJ"), the ALJ issued a Decision and Recommended Order . The ALJ found that "[s]ince December 3, 2004, the Respondents [Massey & Spartan] have violated Section 8(a)(3) and (1) of the Act by discriminatorily refusing to hire former employees of Horizon's Cannelton/Dunn operation for positions in the Mammoth bargaining unit." *Massey Energy Co.*, 9 CA 42057, 2007 WL 4179503 (Nov. 21, 2007).  In addition, the ALJ found that "[s]ince December 3, 2004, the Respondents have violated Section 8(a)(5) and (1) by failing and refusing to recognize and bargain with the Union and by unilaterally changing the terms and conditions of employment that had been in effect for bargaining unit employees prior to the transfer of control and ownership of Horizon's Cannelton/Dunn operation to the Respondents." *Id.*

As a remedy, the ALJ issued a number of recommendations. First, the ALJ recommended that the respondents be ordered to cease and desist from engaging in certain actions. *Id.* The ALJ also recommended that the respondents be ordered to offer certain individuals employment in the positions for which they would have been hired absent unlawful discrimination. *Id.* Moreover, the

ALJ recommended that the respondents be ordered to recognize and bargain with the UMWA. *Id.* Finally, the ALJ recommended that the respondents be ordered to rescind any unilateral changes in employment conditions they made. *Id.* This measure was designed to prevent the respondents "from taking advantage of their wrongdoing to the detriment of the employees and to restore the status quo ante thereby allowing the bargain process to proceed." *Id.*

On December 19, 2007, the petitioner submitted this case to the Board's Injunction Litigation Branch for authorization to initiate injunction proceedings under § 10(j) of the NLRA, 29 U.S.C. § 160(j). (Pet.'s Resp. 2 [Docket 40].) The next day, the then four-member Board, anticipating that it would soon have fewer than three members, entered a temporary delegation order. (*See* Minute of Board Action, Spartan's Mot. Ex. A [Docket 26].) By this order, which became effective on December 28, 2007,  the Board delegated to the its General Counsel "full authority on all court litigation matters that would otherwise require Board authorization." (*Id.*) Specifically, the Board temporarily delegated to the General Counsel "full and final authority and responsibility on behalf of the Board to initiate and prosecute injunction proceedings under Section 10(j)." (*Id.*) The Board stated that its delegation was authorized by "Sections 3, 4, 6, and 10 of the National Labor Relations Act." (*Id.*) At some point on or after December 28, 2007, the Board's membership fell below three. (Spartan's Mem. 3.)

After reviewing the case materials, the Injunction Litigation Branch submitted its recommendation to the General Counsel. (Pet.'s Resp. 3.) The General Counsel recused himself from evaluating the propriety of a 10(j) injunction. (*Id.*) Upon the General Counsel's recusal in this matter, the Deputy General Counsel acted in his stead. (Pet.'s Resp. 3.)

On January 22, 2008, the respondents filed exceptions to the ALJ's decision with the Board. (Spartan's Mem. 3.) Acting on behalf of the Board, the Deputy General Counsel authorized the filing of a 10(j) injunction on January 29, 2008. (*See* Mem. of John E. Higgins, Deputy General Counsel, Pet.'s Resp. Ex. A.)

### C. Procedural History

On January 31, 2008, the petitioner, on behalf of the Board, filed with this court a Petition for Injunction under Section 10(j) of the National Labor Relations Act, as Amended [Docket 1]. Jurisdiction is based on federal question under 28 U.S.C. § 1331 because the petitioner brought this case under 29 U.S.C. 160(j) and because the respondents admittedly transact business in the Southern District of West Virginia. The respondents answered the petition and denied that the court had subject-matter jurisdiction because, according to the respondents, the petitioner does not have the authority to bring the petition. (*See* Dockets 28 & 32.) On February 25, 2008, Spartan and Massey separately filed motions to dismiss the petition. In its memorandum in support of its motion, Massey adopted fully Spartan's memorandum. (Massey's Mem. [Docket 31].) Thus, I will treat the two motions as one.

## II. Discussion

The respondents argue that the petition for a § 10(j) injunction must be dismissed for two reasons. First, the respondents assert that "the Board improperly delegated its statutory power to determine if it should petition the Court for an injunction under Section 10(j) of the Act to the General Counsel and the General Counsel then re-delegated the decision to person(s) on his staff." (Spartan's Mem. 3.) Second, the respondents maintain that "an injunction is not 'just and proper' as the Petition itself shows that the Board delayed over three years after commencement of the

alleged unfair labor practices and almost 18 months after filing its initial Complaint, before petitioning for injunctive relief." (*Id.* at 3-4.) I will address the respondent's first argument but will not rule on the second until after I conduct a hearing.

### A. Delegation by Board to General Counsel

In support of their "improper delegation" argument, the respondents assert that the Board cannot delegate the authority to file a petition for § 10(j) relief. (Spartan's Mem. 5.) First, the respondents contend that the when Congress enacted § 10(j), it "clearly never intended for the ultimate authority to pursue Section 10(j) injunctions to rest anywhere but with the Board." (*Id.* at 7.) In support of this proposition, the respondents cite the legislative history of the Labor Management Relations Act ("LMRA"). According to the respondents, the Board's December 20, 2007, decision to delegate its statutory responsibilities under § 10(j) was an impermissible "abdication" of its role in the checks and balances established by Congress. (*Id.* at 10.) The respondents also assert that "the Board's delegation of authority to the General Counsel violates the principle that one who decides a case must actually hear it." (*Id.* at 10.) The respondents maintain that the decision to authorize a § 10(j) petition is a judicial act that only the Board may perform, not a prosecutorial act that could properly be assigned to the General Counsel. (*Id.* at 12; Spartan's Reply 4-5 [Docket 44].) The respondents acknowledge that other courts have addressed strikingly similar issues and found that the Board's delegation was proper. (Spartan's Mem. 11-12; Spartan's Reply 3-4.) The respondents do not try to distinguish these cases. Instead, they argue that those cases were incorrectly decided because the courts in those cases "wholly failed to consider either the legislative history of the Act or the practice carrying it out." (Spartan's Reply 3-4.)

The respondents are correct that 29 U.S.C. § 160(j) gives the Board the power to petition for a temporary injunction after a complaint is issued pursuant to the NLRA. The respondents completely ignore, however, the effect of 29 U.S.C. § 153(d). Section 153(d) is titled "General Counsel; appointment and tenure; powers and duties; vacancy," and provides that the General Counsel "shall have such other duties as the Board may prescribe or as may be provided by law." 29 U.S.C. 153(d). This statutory provision explicitly allows the Board to delegate to the General Counsel other duties, such as the authority to petition for § 10(j) injunctions.

The court in *Evans v. International Typographical Union*, 76 F. Supp. 881 (D. Ind. 1948), addressing this very issue, reasoned that "[t]he provision that the General Counsel shall have 'such other duties as the Board may prescribe' must mean necessarily that the Board may confer upon the General Counsel functions other than those specifically committed to him by statute; otherwise, it would be 'superfluous and without meaning or purpose.'" *Id.* at 888-89. Moreover, "since these 'other duties' which the Board may prescribe for the General Counsel are obviously not duties which relate to functions he already has under the statute, they necessarily are functions which are expressly or impliedly lodged with the Board." *Id.* at 889. Relying on § 153(d), Judge Swygert held that the Board had the authority to delegate to the General Counsel the powers conferred by § 10(j) to petition for an injunction. *Id.* I agree with Judge Swygert that 29 U.S.C. 153(d) gives the Board the authority to delegate its § 10(j) powers to the General Counsel.

The respondents spend a great deal of time and effort describing the powers of the "Administrator" that was proposed in the House version of the Labor Management Relations Act. I find this legislative history analysis to be of little value, however, because Congress did not create an "Administrator." It created a General Counsel with ability to exercise "such other duties as the

Board may prescribe." Presumably, Congress was aware of the tension between its desire to keep the General Counsel independent of the Board and § 153(d)'s delegation clause, and I must not ignore the plain language of 153(d) and substitute in its place the respondents' view of what Congress might have meant.

The district court for the Southern District of Florida recently considered the arguments made by the respondents and held that "the delegation by the Board to its General Counsel of the authority to authorize and initiate the filing of a petition for injunction pursuant to Section 10(j) of the Act is lawful." *Kentov v. Point Blank Body Armor, Inc.*, 258 F. Supp. 2d 1325, 1329 (S.D. Fla. 2002). Other courts addressing the delegation of § 10(j) authority to the General Counsel have likewise found it proper. *See Penello v. UMWA*, 88 F. Supp. 935, 937 (D.D.C. 1950); *Evans*, 76 F. Supp. at 889; *Madden v. UMWA*, 79 F. Supp. 616, 622 (D.D.C. 1948). The respondents argue that these cases were wrongly decided because their "cursory" analyses did not take into account "the clear legislative purpose behind the separation of the General Counsel from the Board." (Spartan's Mem. 11; Spartan's Reply 3-4.) I disagree. These cases analyzed both the legislative history, and, more importantly, the text of 29 U.S.C. §§ 153 and 160(j), and are persuasive.

This is not to say that the Board can delegate any or all of its powers to the General Counsel. The legislative history cited by the respondents does evince an intent on the part of Congress to keep the General Counsel in the investigative realm rather than the judicial. (*See* Spartan's Mem. 9.) "The Board could not delegate away its authority on a quasi-judicial adjudicatory decision, absent specific authorization from Congress." *Kentov*, 258 F. Supp. 2d at 1328-29. As noted in *Kentov*, however, "[t]here is a critical distinction between the Board delegating the authority Congress reposed in it to *grant* relief on the merits of a claim, from the delegation of its authority to *seek* relief

-8-

from another adjudicative body." *Id.* at 1328. The distinction is particularly important in the instant case, "where the delegation of authority to seek judicial injunctive relief is ancillary to the General Counsel's statutorily delegated authority to issue complaints alleging unfair labor practices under [29 U.S.C.] Section 160, and where the delegation is supported by a congressional authorization that the Board may give the General Counsel 'such other duties' as it may prescribe." *Id.* Because the instant case does not involve the Board impermissibly assigning its core functions, the delegation is proper.

The cases cited by the respondent for support – *KFC* and *Flav-O-Rich* – are distinguishable because they do not involve the delegation of § 10(j) authority. *See KFC Nat'l Mgt. Corp. v. NLRB*, 497 F.2d 298 (2d Cir. 1974); *Flav-O-Rich v. NLRB*, 531 F.2d 358 (6th Cir. 1976). In *KFC*, the Board delegated to its staff members the authority to rule on a petition for review of the decision of a NLRB regional director. *KFC*, 497 F.2d at 299-300. Likewise, *Flav-O-Rich* involved the denial of a "Motion to Abate Proceedings and Reopen the Record." *Flav-O-Rich*, 531 F.2d at 361 (6th Cir. 1976). In both of these cases, the power delegated was judicial in nature. As noted above, that is not the case here because this court, not the Board or its delegates, will rule on the injunction petition. Moreover, neither *KFC* nor *Flav-O-Rich* dealt with delegations to the General Counsel, and thus, § 153(d) was not applicable. *See Kentov*, 258 F. Supp. 2d at 1328 ("All of the case law relied upon by Respondents in arguing that the *Evans* case was incorrectly decided are either cases in which there was no statutory basis for the delegation or where an adjudicatory decision was delegated."). Nor does the delegation in this case violate the principle that one who decides a case must actually hear it. The General Counsel, or, as described below, the Deputy General Counsel, had the authority to decide whether to petition this court for an injunction under § 10(j), and there is no evidence that

-9-

the Deputy General Counsel did not personally consider the propriety of authorizing the petition. (*See* Mem. of John E. Higgins, Deputy General Counsel, Pet.'s Resp. Ex. A.)

Finally, I reject the argument that because § 10(*l*) of the NLRA expressly allows the General Counsel to seek an injunction in certain cases, the Board cannot delegate § 10(j) power to the General Counsel. (*See* Spartan's Reply 4.) "While it is true that in Section 10(*l*) of the Act, enacted by Congress at the same time as Section 10(j), such authority was delegated, it does not follow from this disparity in congressional treatment that the Board cannot delegate Section 10(j) authority." *Kentov*, 258 F. Supp. 2d at 1329. That Congress required the delegation of § 10(*l*) authority says nothing about whether and when the Board can delegate § 10(j) authority under 29 U.S.C. § 153(d).

I **FIND** that the Board's delegation to the General Counsel of its authority to authorize and initiate the filing of petitions for § 10(j) injunctions was lawful.

### B. Delegation by General Counsel to Deputy General Counsel

The respondents' second "improper delegation" argument is that even if the Board's delegation to the General Counsel was lawful, it was improper for the Deputy General Counsel to authorize the filing of the § 10(j) petition once the General Counsel recused himself. (Spartan's Mem. 13.) According to the respondents, the Board attempted to delegate its authority to the General Counsel, but it did not provide the General Counsel with the power to re-delegate that authority to a member of his staff. (*Id.*) To allow the Deputy General Counsel to wield the Board's power under § 10(j) of the NLRA would, according to the respondents, "remove[] the decision to file the Petition even further from Congress's original intent that the *Board* make this decision" and "completely destroy" the delicate system of checks and balances established by Congress. (*Id.* at 14.) The petitioner, on the other hand, argues that "[t]he Deputy GC's Section 10(j) authorization is within

-10-

his powers and responsibilities as defined by Agency rules, and consistent with the Board's 2007 delegation." (Pet.'s Resp. 7.) The petitioner further notes that the Deputy General Counsel is authorized to act on behalf of the General Counsel under the Federal Vacancies Reform Act of 1998, 5 U.S.C. § 3345(a)(1).

> The Federal Vacancies Reform Act provides that
>
> [i]f an officer of an Executive agency . . . whose appointment to office is required to be made by the President, by and with the advice and consent of the Senate, dies, resigns, or is otherwise unable to perform the function and duties of the office, the first assistant to the office of such officer shall perform the functions and duties of the office temporarily in an acting capacity subject to the time limitations of section 3346.

5 U.S.C. § 3345(a)(1). Section 3346 states that "[e]xcept in the case of a vacancy caused by sickness, the person serving as an acting officer as described under section 3345 may serve in the office for no longer than 210 days beginning on the date the vacancy occurs." 5 U.S.C. § 3346(a).

The General Counsel of the National Labor Relations Board is an executive officer who is appointed by the President, by and with the advice and consent of the Senate. *See* 29 U.S.C. § 153(d). Here, the General Counsel recused himself from considering the propriety of § 10(j) relief and was therefore unable to perform the function and duties of the office. His duties, including the delegated duty of authorizing the filing of § 10(j) petitions, could lawfully be performed by his first assistant. The first assistant to the General Counsel is the Deputy General Counsel. NLRB Revision of the Description of the Powers and Duties of the Deputy General Counsel, 66 Fed. Reg. 63416 (Dec. 6, 2001). Consequently, the Deputy General Counsel does have the authority to act for the General Counsel, so long as the action is consistent with the time limitations of 5 U.S.C. § 3346.

It is not clear from the record when the General Counsel recused himself and created a temporary vacancy. However, it appears that the General Counsel did not recuse himself until §10(j) proceedings were contemplated. The petitioner submitted this case to the Board's Injunction Litigation Branch on December 19, 2007. It is therefore fair to assume that the General Counsel recused himself by that date at the earliest. The Deputy General Counsel authorized the petitioner to institute § 10(j) proceedings on January 29, 2008. Thus, the Deputy General Counsel acted well within the 210-day window provided for by 5 U.S.C. § 3346(a)(1).

Accordingly, I **FIND** that it was lawful for the Deputy General Counsel to stand in the stead of the General Counsel when he authorized the filing of a § 10(j) petition. I **DENY** the respondents' motion to dismiss insofar as it is based on the petitioner's authority to bring the petition.

C. Just and Proper

Section 10(j) of the NLRA, 29 U.S.C. § 160(j) states that a district court may issue a temporary injunction under that provision if it finds that such relief would be "just and proper." To be entitled to a 10(j) injunction, a petitioner must demonstrate that there is "reasonable cause to believe the [NLRA] has been violated" and that it "appear[s] from the circumstances of the case that the remedial purposes of the Act will be frustrated unless relief pendente lite is granted." *NLRB v. Aerovox Corp.*, 389 F.2d 475, 477 (4th Cir. 1967); *Ledford v. Mining Specialists, Inc.*, 865 F. Supp. 314, 322 (S.D. W. Va. 1993) (Copenhaver, J.) ("[I]njunctive relief is appropriate if the Regional Director of the NLRB has 'reasonable cause' to believe that the defendants violated the Act and the relief sought would be 'just and proper.'").[1] The respondents concede, for the purposes of arguing

---

[1] There appears to be a dispute among the circuits about what standard to use in a § 10(j) case, and the Fourth Circuit has not recently addressed the issue. *See Gold v. Mid-Atl. Reg'l Council*
(continued...)

against the instant § 10(j) petition, that the Board can prove that "reasonable cause" exists. (Spartan's Mem. 15.) The parties disagree, however, as to whether temporary injunctive relief in this case would be "just and proper." Because I will hold a hearing on whether injunctive relief is appropriate, I will not resolve the "just and proper" issue at this time.

### III. Conclusion

I **FIND** that the Board's delegation of its authority under § 10(j) of the NLRA, 29 U.S.C. § 160(j) to the General Counsel was lawful. I also **FIND** that the exercise of this authority by the Deputy General Counsel was lawful. Accordingly, the respondents' Motion to Dismiss is **DENIED**.

I **DIRECT** the Clerk to send a copy of this Order to counsel of record and any unrepresented party. I further **DIRECT** the Clerk to publish the decision on the court's website at www.wvsd.uscourts.gov.

          ENTER:  April 14, 2008

              Joseph R. Goodwin, Chief Judge

---

[1](...continued)
*of Carpenters*, 407 F. Supp. 2d 719, 724 (D. Md. 2005); *D'Amico v. Townsend Culinary, Inc.*, 22 F. Supp. 2d 480, 484-86 (D. Md. 1998).